UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

     v.                   CASE NO. 8:23-cr-13-KKM-CPT

MICHAEL LUCAS AMBROSE

## UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS

The Court should deny defendant Michael Lucas Ambrose's motion to
suppress (Doc. 38) because Ambrose's identity was discovered pursuant to an
investigation involving a live-victim and his arrest and confession were legally
obtained as a result of that investigation. As it relates to Count 1 of the indictment,
Ambrose did not maintain a reasonable expectation of privacy in his Snapchat
account because when he created his Snapchat account he agreed to Snapchat's
Terms of Service and Community Guidelines, which warn users any behavior of
child exploitation or transmission of child sexual abuse material will be reported to
authorities. When the National Center for Missing and Exploited Children
("NCMEC") reviewed the CyberTip submitted by Snapchat from November 10,
2022 (Exhibit 2), the child sexual abuse material had already been reviewed by an
individual at Snapchat and NCMEC did not exceed the scope of that private search
by reviewing the exact same file and nothing additional. When law enforcement
received the NCMEC CyberTip from November 10, 2022, it only reviewed the same

file that had been previously reviewed by Snapchat and NCMEC, thus not exceeding the scope allowable under law.

## I.     PROCEDURAL BACKGROUND

On December 16, 2022, Ambrose was arrested pursuant to a federal criminal complaint charging him with Receipt of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2), and Possession of Child Pornography, in violation of 18 U.S.C. § 2252(a)(4). Doc. 2. On December 19, 2022, Ambrose was released from custody on bond conditions. Doc 10. On January 10, 2023, a federal grand jury returned an indictment charging Ambrose with Distribution of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2), and Possession of Child Pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). Doc. 14. On January 31, 2023, due to an impending necessary change of residence, Ambrose's order of release was vacated and he was detained. Doc. 29. On April 7, 2023, Ambrose filed a motion to suppress evidence to which the government has been ordered to respond by April 28, 2023. Docs. 38, 40.

## II.     FACTUAL BACKGROUND

The United States anticipates that, should the Court set an evidentiary hearing, the case agent, Special Agent Connor Creasey, and representatives from NCMEC and Snapchat would testify as follows:

### A. Investigation Background

1. On or about July 15, 2022, the Egg Harbor Township Police Department in New Jersey received a report of an adult having sexual intercourse with a 12-

year-old child ("A.S."). The adult in the New Jersey investigation is a different individual than Ambrose.

2. On or about July 15, 2022, A.S.'s mother consented to a search of A.S.'s Apple iPhone 13.

3. On or about September 15, 2022, law enforcement in New Jersey obtained a search warrant for A.S.'s Snapchat account.

4. On or about November 14, 2022, FBI Newark became involved in the investigation and assumed A.S.'s Snapchat account for investigative purposes.

5. On or about November 14, 2022, FBI Newark conducted an initial review of A.S.'s Apple iPhone 13.

6. During that review, Special Agent Bernadette Casey determined A.S. was communicating with various telephone numbers, including 863-XXX-5704 and 863-XXX-8915.

7. On or about November 18, 2022, FBI Newark subpoenaed the subscriber information for phone number 863-XXX-5704 from T-Mobile U.S., Inc., and learned the subscriber was Ambrose with a billing address of 640 South Broadway Avenue, Apartment 1, Bartow, Florida 33830 ("Broadway Apartment").

8. On or about November 18, 2022, FBI Newark subpoenaed the subscriber information for phone number 863-XXX-8915 from TextNow, Inc., and learned the subscriber was Ambrose with a frequent IP address of 73.91.13.184.

9. On or about November 21, 2022, FBI Newark subpoenaed the subscriber information for phone number 863-XXX-1854 from T-Mobile, and learned the subscriber was Ambrose with a residential address of the Broadway Apartment.

10. On or about November 29, 2022, FBI Newark submitted a request to NCMEC to conduct a database query for IP address 73.91.13.184. NCMEC provided two positive query results for the above-listed IP address.

11. NCMEC provided the following information in the first positive query result (Exhibit 1):

| | |
|---|---|
| Platform: | Snapchat |
| Incident Time: | 11-09-2022 18:45:50 UTC |
| Email Address: | forclashvicotry2@gmail.com |
| Screen/User Name: | bastard_blob |
| Uploaded Files: | 1 |
| Did Reporting ESP View Entire Contents of Uploaded File?: | Yes |
| Classification: | Apparent Child Pornography |

12. NCMEC provided the following information in the second positive query result (Exhibit 2)[1]:

| | |
|---|---|
| Platform: | Snapchat |
| Incident Time: | 11-10-2022 01:51:07 UTC |
| Email Address: | lucasthegreat69@gmail.com |

---

[1] This image/video is the basis for Count One of the Indictment. This image/video was later discovered on one of Ambrose's devices during the search/forensic review.

| | |
|---|---|
| Screen/User Name: | joint_token |
| Uploaded Files: | 1 |
| Did Reporting ESP View Entire Contents of Uploaded File?: | Yes |
| Classification: | Apparent Child Pornography |

13. On or about November 30, 2022, FBI Newark conducted a phone query of IP address 73.91.13.184, which revealed Comcast was the internet provider.

14. On or about December 1, 2022, FBI Newark discovered A.S. had plans to travel to Florida. As a result of FBI Newark's investigation, which revealed A.S. was speaking with multiple phone numbers that had a 863 area code, which covers various counties in south-central Florida, some of which are in the Middle District of Florida, Special Agent Casey contacted the FBI Lakeland office to be on notice of A.S.'s travel and become involved in the overall investigation.

15. On or about December 2, 2022, FBI Newark subpoenaed the username information for the "massive_beats" Snapchat account. The "massive_beats" Snapchat account username was changed to username "joint_token" on or about October 24, 2022. The account had an associated phone number of 863-XXX-1854 and was initially created on March 12, 2018.

16. On or about December 2, 2022, FBI Newark subpoenaed the username information for the "bastard_blob" Snapchat account. The "bastard_blob"

Snapchat account username was changed from username "massive_beats" on or about October 10, 2022.

17. On or about December 6, 2022, Special Agent Creasey reviewed the conversations between A.S. and 863-XXX-5704, which were recovered from A.S.'s cellphone. This telephone number was saved under the name "Michael" in A.S.'s cellphone.

18. The conversations between A.S. and "Michael" indicated the two were in a romantic relationship. The following conversation occurred between A.S. and "Michael" on or about October 23, 2022:

| | |
|---|---|
| "Michael": | I'm sorry [A.S.] |
| "Michael": | Do you want me to stop texting you? |
| "Michael": | I completely understand if you say yes and I will respect your wishes and never bother you again |
| A.S.: | I just wish you wouldn't do stupid things that I do |
| "Michael": | Like what? |
| A.S.: | Text younger females |
| "Michael": | Does that include you? |
| A.S.: | No |
| "Michael": | Okay just making sure… I know I made a mistake and I regretted it as soon as I messaged her and she was the only one in a very very long time… |
| "Michael": | And definitely the last |
| A.S.: | Did the police show up |
| "Michael": | Not yet |

| A.S.: | They prob won't |
|---|---|
| A.S.: | I know how they work |
| | |
| "Michael": | I hope not but I'm still scared about it tbh |
| | |
| A.S.: | They won't |
| | |
| "Michael": | Have they got in contact with you to ask about me? |

19. On or about December 6, 2022, Special Agent Creasey reviewed the conversations between A.S. and 863-XXX-8915. This telephone number was saved under the name "Mixheal" in A.S.'s cellphone.

20. The conversations between A.S. and "Mixheal" indicated the two were in a romantic relationship. The following message was sent from "Mixheal" to A.S. on or about November 11, 2022:

| "Mixheal": | I love you [A.S.] I'm sorry things have been so difficult for both of us |
|---|---|

21. On or about December 6, 2022, FBI Lakeland learned through inquiry with Bartow Electric that Ambrose was the electric customer for the Broadway Apartment.

22. On or about December 6, 2022, Special Agent Creasey confirmed with the United States Postal Service that Ambrose received mail at the Broadway Apartment.

23. On or about December 13, 2022, Special Agent Creasey reviewed the Snapchat warrant return for A.S.'s Snapchat account. The warrant return detailed conversations between A.S. and Ambrose from on or about April 10, 2022, to on or about September 15, 2022. Ambrose used the Snapchat

username "massive_beats" and A.S. referred to him as "Michael" in their conversations.

24. The Snapchat conversations between A.S. and "massive_beats" indicated they were in a romantic relationship. The following conversation occurred on or about June 10, 2022:

| | |
|---|---|
| Ambrose: | But I need my kid girlfriend to be happy |
| Ambrose: | Baby can you please stay 12 forever |
| Ambrose: | Baby…Am I a bad person for being attracted to you? |
| A.S. | No? |
| Ambrose: | But baby… Why do I feel like a bad person for being in love with a 12 year old kid? Idk where this came from. |

25. In his review of the Snapchat search warrant return, Special Agent Creasey observed several occasions on which A.S. sent self-made child sexual abuse material to Ambrose.

26. On or about December 12, 2022, SA Creasey submitted a subpoena to Comcast to determine the subscriber information for IP address 73.91.13.184. Comcast provided the FBI with the requested subscriber information, which detailed that Ambrose was the subscriber, with a phone number of 863-XXX-5704 and an address of the Broadway Apartment.

27. On or about December 13, 2022, Special Agent Creasey received a report from Tampa Police Department detailing a NCMEC CyberTip reported by

Instagram on or about June 20, 2020. The NCMEC CyberTip had an incident date of June 19, 2020, a Snapchat Username of "lucas_aka_massive" and an email address of "mambrose24@gmail.com". The NCMEC CyberTip detailed one video that constituted child sexual abuse material.

28. On or about January 18, 2023, Special Agent Creasey confirmed through a subpoena to Google that Ambrose was the account holder for email account "mambrose24@gmail.com".

**B. Surveillance and Arrest of Ambrose**

29. On or about December 14, 2022, Bartow Police Department detectives went to the Broadway Apartment and made contact with a female later identified as Ambrose's mother. Ambrose's mother confirmed that her and her son, who she referred to as Lucas, are the only people that live at the Broadway Apartment. Detectives heard an adult male voice coming from within the Broadway Apartment but the adult male would not come to the door despite detectives' requests.

30. Through Special Agent Creasey's investigation, he determined that Ambrose used the first name "Lucas", which is actually his middle name. This is further evidenced through an email address and Snapchat username used by Ambrose.

31. On or about December 14, 2022, a FBI surveillance team saw a male matching Ambrose's description with a female matching Ambrose's mother's description leave the Broadway Apartment and get into a red vehicle. The

vehicle was not registered to either individual but had a bumper sticker on the back of it that said "Massive the Composer".

32. On or about December 16, 2022, law enforcement officers observed Ambrose driving the red vehicle to a local Walgreens. Law enforcement made contact with Ambrose, confirmed his lack of valid driver's license, and subsequently detained him for driving without a valid license.

## C. Post-*Miranda* Interview of Ambrose

33. FBI agents conducted a recorded interview of Ambrose in the Walgreens parking lot. Ambrose was advised of his *Miranda* rights and agreed to speak with the interviewing agents with reference to the above-detailed investigation.

34. Ambrose admitted to being 29 years old.

35. When referring to his devices, Ambrose stated there was stuff on his devices that could put him away for a very long time. Ambrose also stated that he made a terrible mistake.

36. Ambrose admitted to meeting A.S. on Instagram and detailed the two communicated through Snapchat.

37. Ambrose admitted to being the user of the Snapchat accounts "massive_beats", "bastard_blob", and "joint_token".

38. Ambrose admitted to saving videos of child sexual abuse that A.S. sent of herself on his tablet and one of his cell phones. The videos A.S. sent Ambrose were of A.S. masturbating.

39. Ambrose told agents there was stuff on his devices that could put him in prison for 25 years. He also admitted that there was other child pornography on his devices.

40. Ambrose admitted to communicating with A.S. for approximately one year and knew she was 12 years old.

41. When asked how often Ambrose asked A.S. to produce child sexual abuse material, Ambrose stated "too fucking often". Ambrose stated he sent nude images and videos to A.S. and received nude images and videos from A.S.

42. Ambrose told FBI agents there was child sexual abuse material depicting babies on his tablet.

43. Ambrose admitted that A.S. was not the first child he's talked to in a sexual way. He told FBI agents he's attracted to children as young as 12 years old.

**D. Forensic Review of Devices**

44. During his initial appearance, on December 19, 2022, Ambrose revoked his consent for FBI agents to search his devices.

45. On or about January 5, 2023, the government secured search warrants for Ambrose's seized devices. On or about February 24, 2023, the government secured an additional search warrant for Ambrose's Samsung Tablet once FBI agents discovered the serial number on the first warrant was off by one letter.[2]

---

[2] This new search warrant was obtained prior to the commencement of the forensic review/search of the Samsung Tablet.

46. A forensic review of several of Ambrose's seized devices, to include his Lenovo Rebel Cellular Phone, Samsung Galaxy Cellular Phone, and 1.0 Terabyte External Hard Drive, revealed the presence of approximately 17,300 images and 70 videos of child sexual abuse material.

## III.  ARGUMENT

Ambrose's Motion to Suppress ignores pertinent facts of the investigation. Doc. 38. In his motion, Ambrose's analysis omits any mention of the victim in this case, the consensual review of the victim's phone as part of the FBI New Jersey investigation (which brought to light communications between the victim and Ambrose) and the search warrant of the victim's Snapchat account (which provided evidence of the victim and Ambrose's sexual relationship). Those investigative actions brought Ambrose on law enforcement's radar; the NCMEC CyberTips were a supplementary part of the investigation as a way to confirm Ambrose's identity and get a bigger picture of how much of a danger Ambrose was to the community.

As such, the analysis provided by Ambrose truly is not relevant as it relates to the Possession of Child Pornography charge in the indictment. That charge was a result of a legal review of text messages provided by A.S. that ultimately led law enforcement to Ambrose. Ambrose waived his *Miranda* rights and agreed to speak to FBI agents and initially consented to the search of his devices. Upon a forensic preview of Ambrose's devices, the FBI discovered child sexual abuse material. Additionally, Ambrose admitted to the FBI that they would find child sexual abuse material, depicting children as young as babies on his devices. A full forensic review

of Ambrose's devices pursuant to search warrants revealed thousands of images of child sexual abuse.

Ambrose's arguments relating to reasonable expectation of privacy, private search doctrine and government actors may be relevant as it relates to Count One of the indictment. The basis of Count One of the indictment is a video that was the subject of a NCMEC Cybertip that the FBI ultimately discovered also present on one of Ambrose's devices. Accordingly, the government tailors its analysis to the NCMEC Cybertip that is the subject of Count One (Exhibit 2).

## A. Snapchat, Inc. is Not a Government Agent

### a. No Expectation of Privacy

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Amendment's protections extend only to items or places in which a person has a "reasonable expectation of privacy." *California v. Ciraolo*, 476 U.S. 207, 211 (1986) (quoting *Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan, J., concurring)). To establish Fourth Amendment standing, a person must have "both a subjective and an objective expectation of privacy" in the item or place searched. *United States v. King*, 509 F.3d 1338, 1341 (11th Cir. 2007) (citation and quotation omitted). "The subjective component requires that a person exhibit an actual expectation of privacy, while the objective component requires that the privacy expectation be one that society is prepared to recognize as reasonable." *Id*.

When a user creates an account with Snapchat, they must agree to Terms of Service, which governs a user's use of Snapchat. *See* Exhibit 3. There is no realistic expectation of privacy from Snapchat once this agreement is made. Under the Snapchat Terms of Service in effect at the time of the NCMEC Cybertip Report that is the basis of Count One, a user has a "worldwide, royalty-free, non-assignable, non-exclusive, revocable, and non-sublicensable license to use the Services. *Id*. at 2-3. The license is for the sole purpose of using and enjoying the Services in a way that these terms and our policies, such as our Community Guidelines…allow." *Id.* The Snapchat Community Guidelines detail that "we prohibit any activity that involves sexual exploitation or abuse of a minor, including sharing sexual exploitation, or abuse imagery, grooming, or sexual extortion (sextortion). We report all instances of child sexual exploitation to authorities, including attempts to engage in such conduct. Never post, save, send, forward, distribute, or ask for nude or sexually explicit content involving anyone under the age of 18 (this includes sending or saving such images of yourself)." *See* Exhibit 4 at 3. Additionally, Snapchat warns users that "[w]hile we're not required to do so, we may access, review, screen, and delete your content at any time and for any reason, including…if we think your content violates these Terms." Exhibit 3 at 4. Snapchat notifies its users that whether the content is posted publicly or sent privately, the company reserves the right to review or remove all content that appears on the platform. *Id*.

The Terms of Service that Ambrose had to agree to prior to making a Snapchat account explicitly warned Ambrose that his account posts, whether public or private,

were not immune to screening by the company and that any attempted or actual child exploitation or sharing of child sexual abuse material *will* be reported to law enforcement. Ambrose did not have a reasonable expectation of privacy once he agreed to the Terms of Service.

### b. Terms of Service and Consent

While the Eleventh Circuit has not directly addressed the waiver of an individual's expectation of privacy by consenting to an electronic service provider's Terms of Service, other courts around the country have examined this issue and held that a user's consent and agreement to the Terms of Service completely diminishes the user's expectation of privacy. *United States v. Montijo*, No. 2:21-cr-75-SPC-NPM, 2022 WL 93535, at *7 (M.D. Fla. 2022) (holding that the defendant did not have a reasonable expectation of privacy in his Facebook messages when he agreed to Facebook's community guidelines, which explicitly stated that Facebook would send any apparent child exploitation material to NCMEC); *United States v. Stratton*, 229 F. Supp. 3d 1230 (2017) (holding that Sony's Terms of Service, "'explicitly nullified its users reasonable expectation of privacy' because Sony informed its users that it reserved the right to monitor activity and any violations of law may be turned over to law enforcement authorities."); *United States v. Ackerman*, 296 F. Supp. 3d 1267 (2017) (holding that AOL's Terms of Service limited the defendant's reasonable expectation of privacy because AOL explicitly informed him that he must comply with applicable laws and that AOL may take technical and legal action against him if he failed to do so.); *United States v. Weber*, 599 F. Supp. 3d 1025, 1033 (D. Mont.

2022) (holding that the Terms of Service imposed by Instagram likely rendered any subjective expectation of privacy objectively unreasonable because they informed the defendant when he created the account that Instagram was monitoring his content and may provide such content to law enforcement in certain situations.).

Similar to the defendants in all the cases cited above, Ambrose negated any reasonable expectation of privacy in his Snapchat account when he agreed to the Terms of Service that explicitly warned him that Snapchat will notify authorities of any attempted or actual use of the platform involving child exploitation material. Ambrose's attempt to shield his illegal activity on Snapchat by stating he had a reasonable expectation of privacy in his Snapchat account simply is not supported by legal precedent or common sense.

### c. Snapchat is Not a Government Agency because it Partakes in Mandatory Reporting

Federal law requires internet service providers to report apparent instances of child pornography offenses. Specifically, 18 U.S.C. 2258A(a) imposes a duty on providers to submit a CyberTip report containing the facts or circumstances from which there is an apparent violation of certain child pornography offenses. 18 U.S.C. § 2258A(a). Reports of apparent child pornography violations are requested to be submitted "as soon as reasonably possible after obtaining actual knowledge of any facts or circumstances" of the violation. 18 U.S.C. § 2258A(b).

While providers, such as Snapchat, are required to report to NCMEC when they find apparent child pornography, there is importantly, no affirmative duty to search

for child pornography. 18 U.S.C. § 2258A(e). Section 2258A(f) specifically says that providers are not required by law to search their platforms for child pornography. Rather, they are only required to report when they become aware of it.

Ambrose makes the argument that because Snapchat reported the child sexual abuse material once it discovered it, in accordance with the law, it must have acted as a government agent. This simply is not supported by legal precedent around the country or even within the Middle District of Florida. The Protect Our Children Act of 2008 (Protect Act) dictates that electronic service providers must make a report to NCMEC of "any [known] facts or circumstances from which there is an apparent violation of" specified criminal offenses involving child pornography. 18 U.S.C. § 2258A(a)(1)-(2). NCMEC is mandated by the Protect Act to make each "CyberTipline" report available to federal law enforcement. *Id.* § 2258A(c). Electronic service providers that fail to comply with the strictures of the Protect Act face substantial fines. *Id.* § 2258A(a)(1), (e).

Mere compliance with mandatory reporting does not constitute state action by a private entity. *United States v. Rosenow*, 50 F.4th 715, 730 (9th Cir. 2022) (noting that "a private actor does not become a government agent simply by complying with a mandatory reporting statute") (citations omitted)). Electronic service providers ("ESPs") are only obligated to report child sexual abuse material that is *known* to them, but they are not required by law to search for it. 18 U.S.C. § 2258A(f); *Rosenow*, 50 F.4th at 730 (drawing a distinction under the Protect Act between "mandatory *reporting*" and "mandatory *searching*"); *United States v. Meals*, 21 F.4th

903, 907 (5th Cir. 2021 (observing that while the Protect Act insists ESPs report child exploitation to NCMEC, the Act "neither compels nor coercively encourages internet companies to search actively for such evidence"); *United States v. Cameron*, 699 F.3d 621, 636-38 (1st Cir. 2012) (holding that Yahoo's statutory duty under the Protect Act to report to NCMEC "did not impose any obligation to search for child pornography," but "merely an obligation to report child pornography of which Yahoo [ ] became aware"); *United States v. Stevenson*, 727 F.3d 826, 830 (8th Cir. 2013) (refusing to adopt the defendant's argument that AOL's hash-detection program that automatically reported child pornography to NCMEC in accordance with the Protect Act amounted to state action); *United States v. Williamson*, 8:21-cr-00355-WFJ-CPT, Doc. 114 (M.D. Fla. February 10, 2023) (deeming Yahoo to not be a government actor because of proactive review of user accounts and subsequent compliance with the Protect Act).

Based on their Terms of Service and Community Guidelines, Snapchat screens posts and messages on its platform and will report posts or messages depicting child sexual abuse material to the authorities. Snapchat has a private business interest in maintaining a platform that is free from illegal activity, to include child exploitation or child sexual abuse material. Snapchat's business decision to review and report instances of law violations to authorities, including NCMEC, does not make Snapchat a government actor.

**B. NCMEC is Not a Government Entity or Government Agency**

There is no Fourth Amendment violation regarding NCMEC's actions. NCMEC opened purported child pornography that was previously reviewed by Snapchat, Inc. and then provided relevant information to law enforcement. *See* Exhibit 2. Despite Ambrose's conclusory allegations, NCMEC is not a government actor. NCMEC takes on the role of a clearinghouse as a private, nonprofit organization. NCMEC: About Us, https://www.missingkids.org/footer/about. As part of this role, NCMEC makes CyberTips available to federal, state, local, and/or foreign law enforcement agencies involved in the investigation of child sexual exploitation, kidnapping or enticement crimes. 18 U.S.C. § 2258A(c).

NCMEC's mission is to help reunite families with missing children, reduce child sexual exploitation, and prevent child victimization. NCMEC accomplishes its mission through the operation of the CyberTipline, which receives leads and tips regarding suspected crimes of sexual exploitation committed against children. NCMEC: CyberTipline, https://www.missingkids.org/gethelpnow/cybertipline#whathappenstoinformationi nacybertip. Pursuant to 18 U.S.C. § 2258A(a), when internet service providers discover apparent child pornography on their servers or systems, they must submit a report of the suspected child pornography to NCMEC's CyberTipline. Upon receiving a CyberTipline Report that contains images or files of apparent child pornography, a NCMEC analyst may open and view the files. NCMEC makes all CyberTipline reports available to the appropriate law enforcement agency for

independent review and potential investigation. NCMEC receives funding from federal and private foundation grants, corporate financial and in-kind donations to perform its programs of work. There is no evidence that NCMEC's employees, including the CyberTipline staff, are hired, managed or supervised by any government entity.

### C. Neither NCMEC nor Law Enforcement's Review of the Files Submitted by Snapchat Exceeded the Scope of Snapchat's Initial Search.

"A search by a private [entity] does not implicate the Fourth Amendment unless [it] acts as an instrument or agent of the government. *United States v. Steiger*, 318 F.3d 1039, 1045 (11th Cir. 2003); *see also Skinner v. Ry. Labor Execs. Ass'n*, 489 U.S. 602, 614 (1989) ("although the Fourth Amendment does not apply to a search or seizure, even an arbitrary one, effected by a private party on his own initiative, the Amendment protects against such intrusions if the private party acted as an instrument or agent of the [g]overnment."). Where an individual's expectation of privacy in particular information has been "frustrated" by a non-state actor, law enforcement may later lawfully use that information without a warrant. *United states v. Sparks*, 806 F.3d 1323, 1334 (11th Cir. 2015) (citation omitted), *overruled on other grounds by Ross*, 963 F.3d at 1056. As a result, a warrantless search performed by the government following a private search violates the Fourth Amendment only to the extent "it is broader than the scope of the previously occurring private search." *Id.* (citations omitted). A government search crosses this threshold when it

"meaningfully exceeds" the parameters of the private search, *United States v. Harling*, 705 F. App'x 911, 816 (11th Cir. 2017), such as when an officer "learn[s] new, critical information" from his examination of the material at issue, *Montijo*, 2022 WL 93535 at *4-5.

Courts have consistently ruled that if a law enforcement entity conducts a warrantless search subsequent to a private actor search, so long as that law enforcement search does not exceed the scope of the private actor's initial search, there is not a legal issue. *Montijo*, 2022 WL 93535, at *3 (noting that under the private search doctrine, the government is permitted "to replicate a prior private search [without a warrant] provided it stays within the same parameters") (citing *Sparks*, 806 F.2d at 1334); *Phillips v. United States*, , 2021 WL 1342301 at *4 (M.D. Fla. Apr. 9, 2021) (finding no Fourth Amendment violation where NCMEC did not exceed the scope of Yahoo's private search); *Williamson*, 8:21-cr-00355-WFJ-CPT, Doc. 114 (the law enforcement officer that conducted a warrantless search of the images subject to the NCMEC CyberTip did not exceed the scope of NCMEC or Yahoo's previous searches and thus no Fourth Amendment violation existed).

With reference to the NCMEC tip that is the basis for Count One of the indictment against Ambrose (Exhibit 2), Snapchat acted as a private actor when it conducted a search on Ambrose's Snapchat account and discovered child sexual abuse material that was in direct conflict with the Terms of Service and Community Guidelines Ambrose agreed to when creating his account. As a private actor, Snapchat was legally permitted to conduct such a search. There is conflict around the

country as to whether NCMEC is a government actor; however, that analysis is not necessary here because NCMEC's review of the file in question did not exceed the search that Snapchat previously conducted. For sake of argument, if NCMEC is a private actor, it would be permitted to conduct such a warrantless search, similar to the legal warrantless search conducted by Snapchat. However, if NCMEC were deemed to be a state actor, the Court would have to review the extent of NCMEC's warrantless search of the file that was the subject of the November 10, 2022, NCMEC CyberTip to determine if that search exceeded the scope of the search conducted by Snapchat. Based on the facts of the case, the Court would determine that NCMEC's review of the one child sexual abuse file sent to it, did not exceed the review of that file previously conducted by Snapchat in a private capacity.

Accordingly, legal precedent provides the analysis then turns to whether law enforcement, in its warrantless search of the file that was subject of the NCMEC tip, exceeded the scope of the search previously conducted by Snapchat and NCMEC. When law enforcement received the NCMEC CyberTip from November 10, 2022, it was during its overall investigation into Ambrose. Law enforcement opened the one file provided by Snapchat to NCMEC and from NCMEC to law enforcement and conducted no further or additional search as it related to that specific file. Consequently, law enforcement conducted a legally permissible warrantless search when it opened that file.

**D. Ambrose's Admissions and Seized Physical Evidence are Not Fruit of the Poisonous Tree.**

Despite the representation in his motion, the investigation into Ambrose did not commence based on a social media report to NCMEC that Ambrose was distributing child sexual abuse material. Ambrose came on law enforcement's radar because of his romantic and sexual relationship with a 12-year-old in New Jersey. The NCMEC CyberTips were obtained as part of the law enforcement investigation into Ambrose to further confirm his identity and dangerousness to the community. The NCMEC CyberTip from November 10, 2022 (Exhibit 2) only became relevant to the criminal charges when the same file was discovered on Ambrose's devices during a forensic review. Ambrose's admissions were pursuant to a consensual interview during an investigation of him being sexually involved with a 12-year-old. His consent to search his devices and the subsequent search warrants were again based on his sexual relationship with a 12-year-old. The NCMEC CyberTips were a small part of the overall investigation into Ambrose. Ambrose's admissions and search of the devices s was done legally. However, even if the Court were to determine that the interview and device searches were conducted subsequent to the NCMEC CyberTips, as evidenced above, the searches related to Ambrose's Snapchat account and mimicked searches by NCMEC and law enforcement were legally permissible.

### E. The Middle District of Florida, Tampa Division has Previously Dealt with This Legal Issue and Ruled in the Government's Favor.

The Court inquired as to whether this issue had been addressed specifically in the Middle District of Florida. The issues relating to Terms of Service and consent, the private search doctrine, NCMEC CyberTips and subsequent law enforcement review has been previously heard in front of Judge Tuite in *Williamson*, 8:21-cr-355-WFJ-CPT. After conducting an evidentiary hearing, Judge Tuite denied Williamson's Motion to Suppress and Judge Tuite's Report and Recommendation (Doc. 114) was accepted by Judge Jung (Doc. 145).

### IV. <u>CONCLUSION</u>

The investigation into Ambrose began based on the discovery that he had a sexual relationship with a 12-year-old. Through investigative means into various phone numbers and usernames, law enforcement determined Ambrose was the subject. The NCMEC CyberTips were initially obtained by law enforcement as a means to corroborate Ambrose's identity and determine his risk to society. Accordingly, Ambrose's post-*Miranda* confessions and the results of the forensic review of his devices were obtained pursuant to a legal investigation.

Ambrose had no reasonable expectation of privacy in his Snapchat account once he created his account and agreed to Snapchat's Terms of Service and Community Guidelines. Snapchat's search of Ambrose's account was a legally permissible private search. Snapchat did not act as a government actor when it complied with its

mandatory reporting requirement once it became aware of child sexual abuse material on Ambrose's account.

NCMEC's review of the child sexual abuse material file did not exceed the scope of the private search conducted by Snapchat. Additionally, law enforcement's search of the same file did not exceed the scope of the private search conducted by Snapchat.

These are well-established legal issues on which courts have consistently ruled in the government's favor. The government posits that based on the clear legal precedent, an evidentiary hearing is not necessary and the Court can rule on the paper. However, if the Court determines an evidentiary hearing is necessary, the government anticipates needing approximately six to seven hours to present testimony.

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

By:     /s/ *Abigail K. King*
        Abigail K. King
        Assistant United States Attorney
        Florida Bar No. 294963
        400 N. Tampa Street, Suite 3200
        Tampa, Florida 33602-4798
        Telephone:  (813) 274-6000
        Facsimile:   (813) 274-6358
        E-mail: Abigail.King@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2023, I electronically filed the

foregoing with the Clerk of the Court by using the CM/ECF system which

will send a notice of electronic filing to the following:

Samuel Landes, FPD

/s/ *Abigail K. King*
Abigail K. King
Assistant United States Attorney
Florida Bar No. 294963
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone:   (813) 274-6000
Facsimile:    (813) 274-6358
E-mail: Abigail.King@usdoj.gov