**UNITED STATES OF AMERICA**

**v.**                                                    **Case No.: 8:23-CR-13-KKM-CPT**

**MICHAEL LUCAS AMBROSE**

## NON-PARTY SNAP INC.'S MOTION TO QUASH
## AND SUPPORTING MEMORANDUM OF LAW

Pursuant to Rule 17 of the Federal Rules of Criminal Procedure, non-party Snap Inc. ("Snap"), by and through its undersigned counsel, and for the reasons set forth below, respectfully moves to quash two subpoenas issued by Defendant: (1) Defendant's Subpoena to Produce Documents, Information, or Objects in a Criminal Case (the "Document Subpoena") directed to Snap and served on July 11, 2023, and (2) Defendant's Subpoena to Testify at a Hearing or Trial in a Criminal Case (the "Testimony Subpoena," and, together with the Document Subpoena, "the Subpoenas") directed to Subhash Sankuratripati[1] ("Mr. Sankuratripati"), a Snap employee, and served on July 24, 2023.

---

[1] The Testimony Subpoena incorrectly spelled Mr. Sankuratripati's last name as "Sankratripati."

**<u>INTRODUCTION</u>**

In 2022, Snap located child sexual exploitation and abuse imagery ("CSEAI") within Defendant's Snapchat account and, in accordance with its legal obligations, reported it to the National Center for Missing and Exploited Children ("NCMEC"). Defendant has moved to suppress this CSEAI and related evidence, arguing its discovery was the result of Snap's actions as a government agent.[2] No doubt aware that this Court in *United States v. Williamson*[3] concluded that electronic service providers like Snap are not government agents when they identify CSEAI on their platforms and report it to NCMEC, Defendant has concocted two factually unsupported and legally insufficient theories of government agency in an effort to avoid the holding of *Williamson*.

Defendant first speculates that Snap discontinued end-to-end encryption with respect to relevant communications on the Snapchat platform at the behest of the government.[4] Alternatively, and more recently, Defendant theorizes - again, without evidence or support - that, at the behest of the government, Snap chose not to deploy end-to-end encryption as to relevant communications when it

---

[2] Defendant's Motion to Suppress, Dkt. 38.

[3] Case No. 8:21-cr-355-WFJ-CPT, 2023 WL 4056324 (M.D. Fla. Feb. 10, 2023).

[4] *See e.g.,* Defendant's Reply in Support of Motion to Suppress, Dkt. 54 at 11 (theorizing that Snap "*may well have* quietly disabled end-to-end encryption") (emphasis added).

otherwise might have.[5]  In either case, Defendant claims that (1) Snap acted as a government agent when it made decisions about end-to-end encryption on its platform, and (2) those decisions later enabled Snap to identify CSEAI in Defendant's communications it otherwise would not have been able to detect had end-to-end encryption been in place.  Searching for something to support this conjecture, the Document Subpoena seeks (1) communications from 2018 forward between Snap and the government relating to "Snap's institution, continuation or discontinuation of end-to-end encryption" and (2) documents relating to policy decisions by Snap to "discontinue end-to-end encryption."  Snap Exhibit 2, Document Subpoena.  Similarly, the Testimony Subpoena seeks testimony from a Snap employee in the apparent hope that it will support Defendant's baseless allegations.

The Subpoenas should be quashed for three reasons.  First, the information sought by the Subpoenas is irrelevant to Defendant's motion to suppress.  Snap's decisions regarding encryption are, and always have been, made for its own business purposes, not in response to any request, direction, or coercion from the government.  In fact, Snap did not make any meaningful changes to end-to-end encryption nor make any decision to discontinue end-to-end encryption during

---

[5] *See, e.g.,* Motion for Order to Show Cause, Dkt. 100 at 2 (speculating the government "persuade[d] or coerce[d] Snap to forego" the use of end-to-end encryption).

the relevant time period.[6]  More broadly, any hypothetical decision that Snap made at some point in time about the encryption of communications and that would apply to all Snapchat users is immaterial to the pertinent question for purposes of the motion to suppress: whether Snap was acting as a government agent at the time it identified CSEAI in Defendant's account.  The Subpoenas seek no information relevant to that inquiry - and this Court's prior ruling in *Williamson* establishes that, in fact, Snap was not acting as a government agent when it identified the CSEAI that is the subject of this case.

Second, the Subpoenas are unabashed fishing expeditions premised on a deficient foundation of inaccurate assertions and misguided speculation.  With respect to his theory that Snapchat "may well have" disabled end-to-end encryption,[7] Defendant relies on a 2019 presentation given by Mr. Sankuratripati (who was speaking in his personal capacity and not on behalf of Snap).  *See* Motion to Seal, Dkt. 130 at 8; Declaration of Jennifer Stout in Support of Non-Party Snap, Inc.'s Motion for Leave to File a Partially Sealed Memorandum and Declaration ("Second Stout Declaration") at ¶16.  Defendant asserts Mr. Sankuratripati stated in that presentation that all Snapchat communications were end-to-end

---

[6] Snap thus has no documents that are responsive to the second category of records addressed in the Document Subpoena.

[7] Reply in Support of Motion to Suppress, Dkt. 54 at 11.

encrypted.[8]  But in fact, Mr. Sankuratripati's presentation characterized only one type of Snapchat communication as end-to-end encrypted: Snaps, *i.e.*, videos and photos taken within the Snapchat application with the camera functionality.  The CSEAI in this case was **not** a Snap, but media uploaded from Defendant's device to Snapchat - a distinction with a difference that renders the foundation of Defendant's first theory of government agency fundamentally flawed.  Defendant's second theory of government agency fares even worse, as Defendant provides no facts or evidence whatsoever to support his allegation that Snap declined to employ end-to-end encryption with respect to any communications in response to government pressure or request.

Finally, the Subpoenas are overly broad and unduly burdensome.  The Document Subpoena would require Snap, a nonparty, to search hundreds of thousands of communications with the government that occurred over a five-year period and that even mention the word "encryption."  If anything, Defendant may obtain these communications from the government, a party to this case with the same access to the responsive communications, if any exist. Meanwhile, the Testimony Subpoena would require a Snap employee – also not a party to this case – to devote days to preparing for and traveling out of state to appear at the hearing,

---

[8] Reply in Support of Motion to Suppress, Dkt. 54 at 10-11.

time during which he otherwise would be performing his work for Snap.

As is explained below, non-party Snap should not be forced to substantively respond to subpoenas premised on Defendant's speculative and baseless allegations. Compliance with the Subpoenas would implicate a myriad of safety and business concerns, Second Stout Declaration at ¶¶12-15, and would be unreasonably burdensome. The Subpoenas should be quashed.

## STATEMENT OF FACTS

### A. Background About Snap

Snap's flagship product, Snapchat, is a visual messaging app that allows users to communicate by sending, among other things, (1) text-based messages, (2) "Snaps," which are novel photos and videos taken with the camera within the Snapchat app and then directly sent via the app; and (3) photos and videos stored in a mobile device's "Camera Roll" ("Camera Roll media").[9]  Snap Exhibit 1,

---

[9] Defendant recently asserted to the Court that all videos sent via Snapchat are "Snaps." *See* Resp. to Gov't Suppl. Mem. in Resp. to Def. Motion to Compel Discovery, Dkt. 99, at 14-19. This is simply incorrect and based on Defendant's misunderstanding of the Snapchat user interface, as evidenced by the screenshots he provided of the Snapchat app. In the first screenshot provided by Defendant, he identifies via a red arrow what he asserts is the "icon the user taps to access the camera roll." *Id.* at 16. This icon actually leads the user to the Memories section of Snapchat, which is demonstrated by the heading on the screen in the next screenshot. *See id.* at 17. In Memories, users can access several different categories of content, including "Snaps," "Camera Roll," and "Screenshots," via the tabs underneath the search bar, which are visible in Defendant's screenshot. *See id.* Defendant highlights that a Snapchat menu that appeared when he selected a particular image refers to that image as a "Snap." *Id.* But this is not surprising because, as is shown in the screenshot, the relevant image is located under the Snaps tab,

Declaration of David Boyle filed in support of this Motion ("Boyle Declaration") at ¶3. Camera Roll photos and videos are generally taken outside of the Snapchat app.[10] *Id.* at ¶ 3(c). Snapchat users can send text messages, Camera Roll Media, and Snaps to other Snapchat users via the app's "Chat" functionality. *Id.* at ¶4. When a user sends Camera Roll media via Chat, those files are "Chat Media." *Id.* at ¶ 4.

Snap "strive[s] to make sure Snapchatters can use [its] Services safely." Boyle Declaration at Attachment 4 (Snap Community Guidelines, 2023). To that end, Snap promulgates Terms of Service[11] and Community Guidelines[12] and requires users – including Defendant -- to agree to abide by these

---

not the Camera Roll tab. *See id.* Defendant's demonstration therefore does not show that Snap refers to videos in a user's Camera Roll as, or treats them as, Snaps.

With respect to the My AI exchange cited by Defendant, Dkt. 99 at 18, My AI was incorrect that a video "is always a Snap." My AI is an experimental conversational chatbot and is not intended to be an authoritative customer support chatbot. Indeed, Snap warns users that "[b]ecause My AI is an evolving feature, you should always independently check answers provided by My AI before relying on" them, as "it's possible My AI's responses may include . . . incorrect . . . or misleading content." *See* Snap Exhibit 4, Staying Safe with My AI, available at https://help.snapchat.com/hc/en-us/articles/13889139811860-Staying-Safe-with-My-AI.]

[10] If a user saves a Snap to their device, rather than within the Snapchat app, a copy of the image will also appear in their Camera Roll. Boyle Declaration at ¶3(c) & n. 1.

[11] The current version of Snap's Terms of Service, Boyle Declaration at Attachment 3, is available at https://snap.com/en-US/terms (last visited August 28, 2023). The version of the Terms of Service in effect in November 2022, which is the time period relevant to the Subpoenas, is attached to the Boyle Declaration as Attachment 2.

[12] The current version of the Community Guidelines, *id.* at Attachment 4, is available at https://values.snap.com/privacy/transparency/community-guidelines (last visited

rules before they can create an account. *Id.* at ¶5. Because Snap believes the sexual exploitation of minors is "abhorrent," that conduct is prohibited by the Community Guidelines. *Id.* at ¶11, Attachment 4. For example, the Community Guidelines in effect in November 2022 – as well as those in effect today – not only prohibit pornographic content on Snapchat, but also specifically forbid "nude or sexually explicit content involving anyone under the age of 18" from being posted, saved, or sent. *Id.* at Attachment 1 (Snap Community Guidelines, 2022). The Community Guidelines also prohibit using Snapchat for "any illegal activities," *id.*, which includes the distribution or possession of CSEAI.

Indeed, "[p]reventing, detecting, and eradicating [CSEAI] on [its] platform is a top priority for Snap." *Id.* at Attachment 5 (Snap Transparency Report, 2023). To combat CSEAI on Snapchat, Snap invests in personnel who work within Snap's Platform Integrity Team, including the Trust & Safety team, as well as in software tools. *Id.* at ¶ 6. Among the software tools that Snap uses to detect CSEAI present on Snapchat are PhotoDNA and Child Sexual Abuse Imagery ("CSAI") Match[13] technology, which use hash-matching[14] to detect known illegal images

_____

August 24, 2023). The version of the Community Guidelines in effect in November 2022 is attached to the Boyle Declaration as Attachment 1.

[13] PhotoDNA and CSAI Match were developed by Microsoft and Google, respectively. Boyle Declaration at ¶7 n.1.

[14] A hash value is a unique digital fingerprint (also known as a "hash") that can be obtained for any electronic file through the use of an algorithm. *See United States v. Arce*, 49 F.4th 382, 392 (4th Cir. 2022) (describing the use of "a hashing algorithm to create a

and videos of CSEAI.  *Id.* at ¶7.

Whenever Snap detects CSEAI on its platform, its policy is to remove it and take action, such as account deletion, against the offending account.  *Id.* at ¶10.  It also reports the CSEAI to NCMEC via a CyberTip, as required by law.  *Id.* at ¶10; *see also* 18 U.S.C. § 2558A.

### B.    Snap's NCMEC CyberTips Regarding Defendant

In November 2022, Snap submitted CyberTip numbers 138482068 and 138480220 to NCMEC.  *See* Motion to Suppress, Dkt. 38 at 5-6; Opposition to Motion to Suppress, Dkt. 47 at 1-2 and Government Exhibits 1 and 2; Boyle Declaration at ¶13.  These CyberTips were submitted after CSAI Match determined that the hash values of the videos associated with the Cybertips matched those of known CSEAI.  *Id.* at ¶13.  In both cases, the relevant video was sent via Snapchat as Chat Media.  *Id.*

### C.    Defendant's Subpoena Requests

Defendant served the Document Subpoena on July 11, 2023, at a time when the deadline for providing responsive documents (June 18, 2023) had already passed.  The Document Subpoena requests:

---

hash value—a unique digital fingerprint—for each image or video file" and noting that "[t]he resulting hash value is unique to that file).  Once the hash value of a file is obtained, it can be compared against the hash values of files previously determined to be CSEAI.  Boyle Declaration at ¶7 n. 1.

(a) any record or copy of any communication occurring on or after January 1, 2018, between any government officer, employee, or agent, and Snap Inc. or any of its officers, employees, or agents, relating to Snap Inc.'s institution, continuation, or discontinuation of end-to-end encryption for any of its Snapchat products, including but not limited to any note or recording of any oral statement, meeting minutes, text message, email, letter, or similar communication, and

(b) any record or communication relating to any policy decision made by Snap Inc. to discontinue end-to-end encryption on any of its Snapchat products, such as any memorandum, meeting minutes, text message, email, letter, or similar record or communication.

Snap Exhibit 2, Document Subpoena.

Defendant served the Testimony Subpoena on July 24, 2023, which seeks to require Mr. Sankuratripati to testify at a hearing on Defendant's Motion to Suppress, which Snap understands is not currently set for hearing. Snap Exhibit 3, Testimony Subpoena.

### D. Mr. Sankuratripati's Recorded Presentation

Defendant asserts that Mr. Sankuratripati stated in his 2019 presentation that "Snapchat instituted default end-to-end encryption" for all Snapchat communications. Motion to Compel, Dkt. 72 at 2; *see also* Reply in Support of Motion to Suppress, Dkt. 54 at 10. In addition to the fact that Snapchat never did so, Boyle Declaration at ¶¶15-16, the YouTube video of the presentation reveals that is not what Mr. Sankuratripati said. In fact, Mr. Sankuratripati's comments about what communications on Snapchat were end-to-end encrypted were limited

to Snaps.[15] *See id.* at ¶17.  Mr. Sankuratripati further indicated in his presentation that at least some forms of communication on Snapchat were *not* end-to-end encrypted.[16] *See id.* at ¶18.  A contemporaneous news article, which Defendant cited as Defense Exhibit 2, correctly described the presentation as relating to Snaps, but not to text messages or group chats.  Dkt. 54, Defense Exhibit 2.

## ARGUMENT

In *Williamson*, this Court held that a public company – like Snap – that finds CSEAI on its platform and reports it to NCMEC, as it is required to do under threat of sanction, is not a government agent and that there is accordingly no basis as a matter of law to suppress the reported CSEAI.  2023 WL 4056324, at *13-15.  Defendant attempts to avoid the consequences of this Court's prior ruling by concocting theories that Snap "*may well have* quietly disabled end-to-end encryption," Reply in Support of Motion to Suppress, Dkt. 54 at 11 (emphasis added), or chosen to "forgo" its use entirely as to relevant communications on

---

[15] For example, as Mr. Sankuratripati explained encryption for "Snaps," the accompanying slide stated, "Launched to 100% of users running compatible versions of Jan 12th 2018.  Billions 1/1 **Snaps** / day!" (emphasis added).  Real World Crypto 2019 - Day 1 - Session 1 - Morning - part 1, 1:31:06-1:31:54, available at https://www.youtube.com/watch?v=9xePC0Tyeuc.

[16] For example, Mr. Sankuratripati answered a question, in sum and substance and among other things, by stating Snap was "planning on working" on "other message types" while displaying a slide that stated: "Desire to extend to other 1/1 message types - text and group chat[.]"  Real World Crypto 2019 - Day 1 - Session 1 - Morning - part 1, 1:32:20-1:32:25, available at https://www.youtube.com/watch?v=9xePC0Tyeuc.

Snapchat, Motion for Order to Show Cause, Dkt. 100 at 2, due to government request, direction, or coercion, thus permitting the CSEAI at issue to be identified by Snap. And by way of the Subpoenas, Defendant hopes to find something to support one of these theories, which are speculative on their face and lack any supporting basis. Defendant's theories are simply wrong, as Snap has not made any decision to discontinue end-to-end encryption, and it has not made any business decisions about end-to-end encryption at the behest of the government, Boyle Declaration at ¶20. Moreover, it was acting for its own business purposes at the time it identified the CSEAI at issue in Defendant's communications. Boyle Declaration at ¶12; Second Stout Declaration at ¶13.

The Subpoenas should be quashed because they: (1) seek irrelevant and immaterial information, (2) constitute an improper fishing expedition based on unfounded speculation, and (3) are overbroad and unduly burdensome on Snap and its employee, who are non-parties to this matter.

## A.    Legal Standard

This "[C]ourt may quash or modify a subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. Pro. 17(c)(2). Rule 17(c) subpoenas must seek relevant and admissible evidence. *United States v. Nixon*, 418 U.S. 683, 700 (1974). Significantly, Rule 17(c) subpoenas for documents are "not intended to provide an additional means of discovery." *Bowman Dairy Co. v. United States*,

341 U.S. 214, 220 (1951); *see also Nixon*, 418 U.S. at 698 (Rule 17(c) "was not intended to provide a means of discovery for criminal cases"); *United States v. Silverman*, 745 F.2d 1386, 1397 (11th Cir. 1984) (same).  Thus, a Rule 17(c) subpoena is proper only if it seeks "specifically identified documents," *Silverman*, 745 F.2d at 1397, and is "not intended as a general 'fishing expedition,'" *Nixon*, 418 U.S. at 700.  A court should also evaluate the propriety of a Rule 17(c) subpoena by considering whether it seeks materials "otherwise procurable . . . by exercise of due diligence," *id.* at 699, or otherwise unduly burdens the recipient by causing significant costs to locate the requested materials.  *See United States v. Shickles*, No. 1:22-CR-187-RP, 2023 WL 3740324, at *2 (W.D. Tex. May 31, 2023).

"Roughly the same standard applies to subpoenas compelling the attendance of witnesses" at a hearing.  *Stern v. U.S. Dist. Ct. for Dist. of Mass.*, 214 F.3d 4, 17 (1st Cir. 2000).  "Although Rule 17(a), which governs such subpoenas, does not provide explicitly for quashal or modification, courts routinely have entertained motions seeking such relief and decided them by reference to comparable principles."  *Id.*  Thus, a court should quash a subpoena for testimony at a hearing unless the party who served the subpoena can show "that the testimony sought is both relevant and material."  *Id.* (citing *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982).  Like document subpoenas, testimony subpoenas "may not be used to conduct a 'fishing expedition,'" *United States v.*

*Bebris*, 4 F.4th 551, 559-60 (7th Cir. 2021), *cert. denied*, 142 S. Ct. 489 (2021) (citations omitted), and should be quashed if they have "the air of a fishing expedition." *United States v. Rosenschein*, No. CR 16-4571 JCH, 2020 WL 3288125, at *5 (D.N.M. June 18, 2020).

B.   **The Subpoenas Should Be Quashed Because They Seek Irrelevant and Immaterial Information.**

i.   *The Document Subpoena*

Through the Document Subpoena, Defendant seeks communications between Snap and the Government in hopes that they will establish that Snap discontinued - or, in the alternative, chose never to employ - end-to-end encryption based on government request or coercion. But Snap has never made a decision to discontinue end-to-end encryption at all, and decisions it may have made on the topic were not made to placate the government. Boyle Declaration at ¶¶19-20. More significantly, the focus that Defendant places on Snap's hypothetical decisions regarding end-to-end encryption is a red herring, as it does not bear on the pertinent question for the motion to suppress: whether Snap acted as a government agent at the time it determined Defendant's communications contained CSEAI. Because it is fundamental that a Rule 17(c) subpoena must seek relevant information, *see Nixon*, 418 U.S. at 700, the Document Subpoena fails as a matter of law and should be quashed. *See, e.g., United States v. Zahn*, No. 3:22-CR-BJD-MCR, 2022 WL 17811346, at *6 (M.D. Fla. Dec. 19, 2022).

14

A document is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id.* (citing Fed. R. Evid. 401). As an initial matter, the information sought by the Subpoenas is not relevant under Defendant's first theory of government agency – that Snap "may well have" discontinued end-to-end encryption – because Snap never has made a decision to discontinue end-to-end encryption. Boyle Declaration at ¶¶ 15, 19**.** Further, a review of Mr. Sankuratripati's presentation demonstrates he limited his comments about end-to-end encryption to Snaps, *see supra* at 10-11; Defendant sent the CSEAI at issue as Chat Media, which is a different method of communication and one that there is no basis to conclude was end-to-end encrypted in the first place. Boyle Declaration at ¶¶ 13, 16 (stating Chat Media was not end-to-end encrypted in 2019). Even if the records sought by the Document Subpoena demonstrated Snap discontinued end-to-end encryption on Snaps sometime between 2019 and 2022 (which it did not), that would not establish that the CSEAI in this case was found as a result of that decision and support Defendant's theory because the relevant communications here were not Snaps.

That being said, the key question in the context of Defendant's motion to suppress – and against which the relevancy of the Subpoena should be judged – is whether Snap conducted a *search* as a government agent when it identified the

CSEAI in Defendant's communications. This Court has already held that electronic service providers like Snap are not government agents when they choose to search user accounts for CSEAI and then report such material to NCMEC. *Williamson*, 2023 WL 4056324, at *12-15. Just like the provider alleged to be a government agent in *Williamson*, Snap searches for CSEAI on its platform for "unexceptional and . . . expected business interests," *id.* at 14, such as keeping its platform safe and a desire not to be associated with such material, *see* Boyle Declaration at ¶¶6-13; see also *Williamson*, 2023 WL 4056324, at *14. Because its motive was to further its own business interests, not to assist law enforcement, Snap was acting as a private party, not a government agent, when it identified the relevant CSEAI.

Defendant attempts to dodge the consequences of this Court's prior decision by raising the smoke screen of Snap's hypothetical decisions with respect to the end-to-end encryption of communications. But any such decision would be irrelevant to whether the Fourth Amendment was violated when Snap used its software tools to determine whether Defendant's communications contained CSEAI. At most, Defendant argues that Snap - at some point prior to 2022 – made a policy decision, applicable to all users, not to encrypt certain Snapchat communications. But choosing not to encrypt a communication is no more a search of the underlying communication than the mere act of unlocking, but not

opening, a front door is a search of the interior of a home. In either case, the third party learns no information about what is inside. It is only when the communication is examined, and its contents learned, that the Fourth Amendment can be implicated. *See, e.g., United States v. Wilson*, 13 F.4th 961, 973 (9th Cir. 2021) (explaining Fourth Amendment search of an email attachment occurred at the time it was opened because it "expanded the information available" to law enforcement). Thus the relevant moment for the motion to suppress is the point when Snap, using CSAI Match, determined Defendant's communications contained CSEAI, and the relevant question is whether Snap was acting as a government agent *at that point.*[17] Because the information sought by the Document Subpoena would be irrelevant to that question, the Subpoena should be quashed.[18]

ii.    *The Testimony Subpoena*

The same logic applies to the Testimony Subpoena. A subpoena should be quashed if it seeks irrelevant and immaterial testimony, *United States v. Beasley*, 479 F.2d 1124, 1128 (5th Cir. 1973); *Stern*, 214 F.3d at 17, and Defendant provides

---

[17] This Court's decision in *Williamson* makes clear that it was not.

[18] Even assuming *arguendo* that Snap's hypothetical decisions regarding end-to-end encryption are relevant and material to the ultimate disposition of the motion to suppress, the Document Subpoena would require production of irrelevant documents. This is because it is written so broadly as to encompass <u>any</u> communication that mentions end-to-end encryption, even in passing, regardless of whether it pertains to the argument that the government requested, directed, or coerced Snap to discontinue or forego end-to-end encryption.

no basis to believe that Mr. Sankuratripati would provide relevant and material testimony in this case. First, in light of the actual content of Mr. Sankuratripati's 2019 statements - which were limited to discussing the end-to-end encryption of Snaps and did not address Chat Media, which is at issue here – there is no basis to conclude that his testimony would be material to Defendant's first theory of government agency. Defendant has also provided no reason to believe that Mr. Sankuratriapti's has knowledge of any other information about which Defendant seeks to learn (such as communications between the government and Snap or hypothetical decisions not to deploy end-to-end encryption), let alone information bearing on the pertinent question of whether Snap was acting as a government agent at the time it located the relevant CSEAI. The Testimony Subpoena should be quashed.

### C. The Subpoenas Should Be Quashed Because They Are Improper Fishing Expeditions Based on Misguided Speculation.

#### i. *The Document Subpoena*

Because Rule 17(c) is not a discovery device, it does not authorize speculative subpoenas to "see what may turn up," *Zahn,* 2022 WL 17811346, at *6; *see also Nixon*, 418 U.S. at 699. Thus, Rule 17(c) subpoenas must not seek "broad categories of documents," *Zahn*, 2022 WL 17811346, at *6 (internal citations omitted), and instead must specifically identify the information sought, *United States v. Cory*, 3:20-cr-99(S1)-MMH-LLL, 2022 WL 997336, at *4 (M.D. Fla. Apr. 1,

2022).  Moreover, a Rule 17(c) subpoena is proper only when "the movant *knows* that the material sought exists," *id.* (emphasis in original) (quoting *United States v. Weisberg*, No. 08-CR-347 NGG RML, 2011 WL 1327689, at *7 (E.D.N.Y. Apr. 5, 2011)); *see also United States v. Brown*, No. 11-60285, 2013 WL 1624205, at *5 (S.D. Fla. Apr. 15, 2013) (Rule 17(c) subpoena improper when it sought to determine "whether documents even exist").  When a subpoena "constitutes a broad 'fishing expedition' which seeks to use [Rule 17] as a means for obtaining additional discovery," the subpoena must be quashed.  *Noriega*, 764 F. Supp. at 1493 (citations omitted).

The Document Subpoena fails the test.  It does not specifically identify the information to be produced, seeking instead only broad categories of information.  Snap Exhibit 2, Document Subpoena.  It is not based on knowledge or evidence that the requested documents exist; Defendant's own arguments make that clear.  *See, e..g*, Reply in Support of Motion to Suppress, Dkt. 54 at 11 (Snap "may well have quietly disabled end-to-end encryption").  Further, the factual premise upon which Defendant based his speculation that Snap discontinued end-to-end encryption, and upon which his original argument for the issuance of the Subpoenas was built, is fundamentally flawed because Mr. Sankuratripati did *not* say in 2019 that all Snap communications were end-to-end encrypted; he only discussed the end-to-end encryption of Snaps, and he indicated other types of

communications were *not* encrypted. Boyle Declaration at ¶¶ 14, 17. And some of the documents sought by Defendant – those pertaining to a decision to discontinue end-to-end encryption - **do not exist** because Snap has never made such a decision. Boyle Declaration ¶¶15, 19. As a non-party that does not comment on these practices publically for various safety and business concerns, Second Stout Declaration at ¶¶11-13, Snap should not be penalized by being forced to respond to a legally-deficient subpoena.

      *ii.*     *The Testimony Subpoena*

The Testimony Subpoena should be quashed as an impermissible fishing expedition for the same reasons as the Document Subpoena. The Testimony Subpoena, like the Document Subpoena, plainly depends on Defendant's hope that Mr. Sankuratripati's testimony will support his theory that Snap forwent or ended end-to-end encryption at the behest of U.S. government officials. First, during the relevant time period between 2019 and 2022, Snap did not make any decision to discontinue end-to-end encryption at all or materially change end-to-end encryption during that time. Boyle Declaration at ¶¶15, 19. Second, Snap has not made any decisions about encryption based on the preference of U.S. government officials. *Id.* at ¶20. In this context, the Testimony Subpoena, like the Document Subpoena, amounts to an improper fishing expedition and should be quashed. *Cf. Bebris*, 4 F.4th at 559-60; *Rosenschein*, 2020 WL 3288125, at *5.

**D.     The Subpoenas Should Be Quashed Because They Are Unduly Burdensome on Non-Party Snap.**

A Rule 17(c) subpoena should be quashed if it is "unreasonable or oppressive," Fed. R. Crim. P. 17(c)(2), including by imposing an undue burden or "significant cost" on a non-party to locate requested records, *Shickles*, 2023 WL 3740324, at *2.  Moreover, a Rule 17(c) subpoena should be quashed if the requested documents are "otherwise procurable reasonably in advance of trial by exercise of due diligence." *Nixon*, 418 U.S. at 699.  The same principles apply to subpoenas for testimony. *See Stern*, 214 F.3d at 17 (referring to Rule 17(c) and the *Nixon* standard and explaining that "[r]oughly the same standard applies to subpoenas").

*i.     The Document Subpoena*

The Document Subpoena is unduly burdensome and should be quashed both because it seeks an overly expansive set of documents and because it seeks documents from Snap that, assuming they exist, could be obtained elsewhere.  Although there exist no documents responsive to Defendant's request for records reflecting a decision to discontinue end-to-end encryption, as no such decision has been made, Boyle Declaration ¶¶ 15, 19, the Subpoena would require the production of "any record or copy of any communication" between Snap and the government over a five-year period pertaining to the "institution, continuation, or discontinuation of end-to-end encryption."  Snap Exhibit 2,

Document Subpoena.  This broad demand is unduly burdensome because it would require Snap to search through hundreds of thousands (at least) of communications from a myriad of Snap employees who may or may not have communicated with the government over an extended period and in which end-to-end encryption may have been mentioned, even generally.  *See United States v. RW Pro. Leasing Servs. Corp.*, 228 F.R.D. 158, 164 (E.D.N.Y. 2005) (quashing subpoena requests for "all documents" because compliance "could amount to a massive search for countless documents, at great expense" to the non-party subpoena recipient).  This undue burden is all the more unreasonable because Defendant could obtain those communications - assuming any exist - from the government, who, unlike Snap, is a party to the case.  *See Nixon,* 418 U.S. at 699 (explaining subpoena should be quashed if the defendant could obtain the sought documents elsewhere).  Indeed, to the extent that Defendant seeks government communications, the appropriate method to obtain them would be from the government via the Rule 16 discovery process, rather than a subpoena to Snap.  *Cf. United States v. Hastie*, No. CR 14-00291-CG-N, 2015 WL 13310085, at *2 (S.D. Ala. Apr. 21, 2015) ("Rule 17(c) may not displace the role of Rule 16 in circumscribing limited discovery in criminal cases."); *United States v. Irizarry*, No. 14-CR-46-ORL-40, 2014 WL 12641582, at *3 (M.D. Fla. Dec. 24, 2014) ("Rule 17(c) cannot be used to expand the scope of discovery beyond the Government's limited obligations.").

*ii.* *The Testimony Subpoena*

The Testimony Subpoena would also impose undue burdens on Snap and Mr. Sankuratripati, both of whom would be required to prepare for a range of questions about sensitive, confidential Snap policies that have no legitimate relevance to the issues presented in the case. In light of the speculative and unsupported nature of Defendant's theories about Snap and end-to-end encryption, it would be unreasonable to require Mr. Sankuratripati, Snap's head of privacy engineering, to take days out of his schedule to prepare for testimony and to travel from out of state to attend a hearing and to deprive Snap of his work during that time. Snap respectfully submits that the Testimony Subpoena should be quashed for this additional reason.[19]

## CONCLUSION

For the foregoing reasons, Snap respectfully requests that the Court quash Defendant's Subpoenas.

---

[19] Any testimony from Mr. Sankuratripati would have a strong likelihood of involving information protected by the attorney-client privilege, as well as confidential business information belonging to Snap. Requiring Mr. Sankuratripati to testify would require the Court to resolve complex issues relating to the protection of that information, which would be a waste of judicial resources given that the testimony would ultimately be irrelevant.

## CERTIFICATE OF CONFERRAL

Defendant opposes the relief requested; the Government does not oppose the Motion.

Date: December 18, 2023

Respectfully submitted,

*/s/ Demian Ahn*

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1700 K Street NW, Fifth Floor
Washington, DC 20006-3814
(202) 973-8800
Demian Ahn (admitted *pro hac vice*)
dahn@wsgr.com

Chelsea Emma Koff
Stearns Weaver Miller Weissler Alhadeff &
Sitterson, P.A.
200 E. Las Olas Boulevard., Suite 2100
Fort Lauderdale, FL 33301
(954) 462-9587
ckoff@stearnsweaver.com

*Counsel for Non-Party Snap, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 18, 2023, a true and accurate copy of the foregoing Motion has been served via CM/ECF on all counsel of record.

/s/ *Demian Ahn*
Demian Ahn