UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL LUCAS AMBROSE | Case No.: 8:23-CR-13-KKM-CPT |

**DECLARATION OF DAVID BOYLE IN SUPPORT
OF NON-PARTY SNAP INC.'S MOTION TO QUASH**

I, David Boyle, declare as follows:

1. I am currently employed as the Senior Director of Product at Snap Inc. ("Snap"). I have been employed at Snap since July 2018. My responsibilities include, but are not limited to, oversight of the Messaging and User Safety Experience Product Management teams. In those capacities, I have personal knowledge of Snap's approach to and implementation of end-to-end encryption and safety-related scanning on Snapchat.

2. I make this declaration based on personal knowledge and, where indicated, based on my review of Snap's business records. If called as a witness, I could and would testify competently to the matters set forth herein.

    A.   **The Snapchat App**

3. Snap, a publicly traded company, is the developer of the Snapchat mobile application ("Snapchat" or "the app"), a free messaging application that

1

allows users to communicate with each other by sending, among other things:

a.   text messages;

b.   "Snaps," which are photos and videos taken with the camera within the Snapchat app and then directly sent through the Snapchat app; and

c.   photos and videos — generally taken outside the Snapchat app — stored in the mobile device's Camera Roll ("Camera Roll media"), which a Snapchat user can choose to make viewable through and accessible to the Snapchat application.[1]

4.   On Snapchat, users can send text messages, Snaps, and Camera Roll media to other Snapchatters via the app's "Chat" functionality. A conversation taking place in Chat can be between two users ("1-to-1") or a group of users, similar to traditional SMS/MMS messaging. In Chat, individuals can send photos and videos to other Snapchat users, including in the form of Snaps and Camera Roll media from their mobile device. "Chat Media" is a term that refers to, among other things, Camera Roll media sent through the Chat functionality.

5.   In order to use Snapchat, an individual must first register for a Snapchat account. Snap requires all users to agree to and comply with its Terms

---

[1] If a user saves a Snap to their device, rather than within the Snapchat app, a copy of the image will also appear in their Camera Roll.

of Service and associated Community Guidelines policies when they create an account.

### B. Snap Works to Keep Its Platform Safe, Including by Detecting and Removing Child Sexual Exploitation and Abuse Imagery.

6. Snap works to combat Child Sexual Exploitation and Abuse Imagery ("CSEAI") on the Snapchat app. It does so by, among other things, developing and employing software to detect CSEAI and employing individuals to work within Snap's Platform Integrity team, including its Trust & Safety team, among others.

7. Snap uses software tools such as PhotoDNA and Child Sexual Abuse Imagery ("CSAI") Match technology, which use hash-matching technology to detect known illegal images and videos of CSEAI.[2] Snap also allows users to report violations of Terms of Service and Community Guidelines, including through the Snapchat application and the Snapchat Support Site.

8. I understand that the CSEAI at issue in this case was detected and reported to NCMEC in November 2022. Attached as Attachments 4 and 3, respectively, are true and correct copies of Snap's Community Guidelines and

---

[2] PhotoDNA and CSAI Match were developed by Microsoft and Google, respectively, and are used by various tech companies to detect known illegal CSEA images and videos on their platforms. The tools create a unique digital fingerprint (a "hash value" or "hash") of images and videos and enable the comparison of those results with the hash values of known CSEAI (*i.e.*, images and videos that were previously determined to be CSEAI).

Terms of Service in effect in November 2022. Those Community Guidelines prohibited sending child pornography and notified users that violations of the Community Guidelines can result in the removal of the offending content and/or the account as well as reporting to relevant authorities.

9. Current versions of Snap's Terms of Service and Community Guidelines are publicly available on Snap's website. Specifically, the Terms of Service are available at https://snap.com/en-US/terms (Attachment 3 to this Declaration) and the Community Guidelines are available at https://values.snap.com/privacy/transparency/community-guidelines (Attachment 4 to this Declaration). Like those in effect in November 2022, the current Community Guidelines continue to prohibit sending child pornography.

10. When an image is identified as CSEAI, Snap in its regular course of business submits a report to the National Center for Missing and Exploited Children ("NCMEC") via a CyberTip, as required by U.S. law. My understanding is that NCMEC then, in turn, coordinates with domestic and international law enforcement. Snap also removes the CSEAI from the Snapchat platform and takes action against the offending account.

11. Snap has made clear in public statements, including in Snap's Transparency Report (https://values.snap.com/privacy/transparency attachment 5 to this Declaration), that the sexual exploitation of any member of

the Snapchat community, especially minors, is illegal, abhorrent, and prohibited by Snap's Community Guidelines.

12. Based on my knowledge and experience, Snap did not implement these policies and procedures at the request or direction of law enforcement or any government agency. Rather, preventing, detecting, and eradicating CSEAI on Snapchat is a top priority for Snap, and Snap continually evolves its capabilities to combat these and other crimes.

13. Based on my review of Snapchat records kept in the regular course of business, I know that in November 2022, Snap filed CyberTips 138482068 and 138480220 with NCMEC. Each CyberTip reported a previously-hashed, illegal video of CSEAI identified by Snap through hash-matching, proactive-detection technology. In each case, the illegal video was detected as Chat Media; the reported videos were *not* Snaps (*i.e.*, a photo or video taken with the in-app Snapchat camera and directly sent via Snapchat).

C. **Snap's Use of End-to-End Encryption**

14. I understand that the defendant in this case alleges that in 2018 or 2019 all Snapchat communications were end-to-end encrypted based on a video available on Youtube (https://www.youtube.com/watch?v=9xePC0Tyeuc) featuring Mr. Subhash Sankuratripati, an engineer at Snap.

15. Snap has never applied end-to-end encryption to all communications sent through the Chat feature. Encryption in and around the January 2019 time period was limited to 1-to-1 Snaps (*i.e.*, photos and videos taken with the Snapchat camera and directly sent to a single recipient).

16. Chat Media sent via Chat was *not* end-to-end encrypted.

17. Based on my review of the video, Mr. Sankuratripati did not state that all Snapchat communications were end-to-end encrypted. In the video, which appears to have been made on or about January 9, 2019, Mr. Sankuratripati described the end-to-encryption of "Snaps" and then displayed a slide stating, in part, "Launched to 100% of users running compatible versions of Jan 12th 2018. Billions 1/1 Snaps / day!" (approximately between timestamps 1:26:26 and 1:32:15).

18. Furthermore, starting at approximately timestamp 1:32:49, Mr. Sankuratripati answered a question by stating, in sum and substance and among other things, "[w]e have other message types. So, those are all things that we are planning on working." At the time he said that, he displayed a slide stating: "Desire to extend to other 1/1 message types - text and group chat[.]" In other words, based on my review of the video, Mr. Sankuratripati indicated that other communications were not end-to-end encrypted.

6

19. I have personal knowledge that Mr. Sankuratripati's description of the state of end-to-end encryption on Snapchat at the time (in or around January 2019) was accurate, including that media sent through Chat was not end-to-end encrypted if it was not a Snap. Moreover, I have personal knowledge that the state of end-to-end encryption on Snapchat had not changed in relevant ways from that time to and through November 2022, when Snap detected the two videos at issue in this case and reported them to NCMEC.

20. Based on my knowledge and experience, Snap's decisions about whether to implement end-to-end encryption in the context of the Snapchat app have been, and continue to be, made for its own business purposes, not in response to a request by or direction from any government agency or official.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this _____ day of _____ 2023.

                                                */s/ David Boyle*
                                                David Boyle

**Certification Pursuant to Section H.3. of the Administrative Procedures for Electronic Filing**

\*I certify that I have the signed original of this document that is available for inspection during normal business hours by the court or a party to this action.

/s/*Demian Ahn*
Demian Ahn